## CITY OF HOUSTON *v.* SOUTHWESTERN BELL TELEPHONE COMPANY.

## SOUTHWESTERN BELL TELEPHONE COMPANY *v.* CITY OF HOUSTON.

**APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF TEXAS.**

Nos. 219, 220. Argued April 24, 25, 1922.—Decided May 29, 1922.

1. The evidence establishes that the local telephone rate fixed by the appellant city was confiscatory. Pp. 321, 322.

2. In a suit by a local telephone company to restrain enforcement of an ordinance rate as confiscatory, there was evidence that the instruments used by the plaintiff were leased by it from another corporation which owned substantially all of its stock and also owned a large majority of the stock of a third corporation from which the plaintiff obtained much of its equipment and supplies, and that the charges paid by the plaintiff in return were reasonable and less than such services and supplies could be obtained for from other sources. *Held*, that the plaintiff was not obliged to prove the profits made by the two other companies, generally or in the business thus done with the plaintiff. P. 323.

3. A telephone company, by acceptance of a city ordinance approving its purchase of and merger with another company and containing an agreement on its part to measure its rates by a fair return upon its capital actually invested in the plant purchased, is not estopped from insisting that they shall be based upon the fair value of the property useful and used at the time of inquiry, when the ordinance is void as to the city, under the state constitution, and therefore lacks mutuality as between the parties. P. 324.

4. Whether going-concern value should be considered in determining the base for fixing the rates of a public service corporation depends on the financial history of the corporation. P. 325. *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388.

5. An assignment of error which involves careful study of a voluminous record will not be considered if the provisions of Equity Rule 75, that evidence be stated in simple, condensed form, and of Rule 21 of this court, that briefs refer to the pages of the record relied on, have not been properly complied with. P. 325.

268 Fed. 878, affirmed.

APPEAL and cross appeal from a decree of the District Court enjoining a city from enforcing a rate fixed by ordinance for a telephone company.

*Mr. W. J. Howard* and *Mr. Sewall Myer,* with whom *Mr. A. E. Amerman* was on the briefs, for the City of Houston.

*Mr. C. M. Bracelen* and *Mr. Nelson Phillips,* with whom *Mr. W. H. Duls* and *Mr. N. T. Guernsey* were on the brief, for Southwestern Bell Telephone Co.

MR. JUSTICE CLARKE delivered the opinion of the court.

These are cross appeals in a suit to restrain the enforcement of an ordinance enacted by the City of Houston, Texas (hereinafter referred to as the City), prescribing rates for telephone service, based upon the claim that the rates are confiscatory.

The master to whom the case was referred found that the rates were clearly confiscatory and the District Court, while modifying his findings in some respects, confirmed his report and in its decree enjoined the enforcement of the ordinance.   A federal constitutional question being involved a direct appeal brings the case to this court for review.

The Constitution of Texas, adopted in 1876, § 17, Article I, provides:

" No. irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the legislature, or created under its authority, shall be subject to the control thereof."

It has been definitely decided that, while municipal corporations in Texas, as agencies of the State, may have the power to prescribe rates for public service corporations, this provision of the constitution prohibits their making contracts for the future which may not be modified at any time by appropriate action of the municipal-

ity. *San Antonio Traction Co.* v. *Altgelt,* 200 U. S. 304; *San Antonio* v. *San Antonio Public Service Co.,* 255 U. S. 547, and *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539.

The ordinance here involved was passed in 1909 and therefore this state of the law would remove all question of contract from the case, if it were not that in 1915 the appellee in No. 219, the Southwestern Bell Telephone Company (hereinafter referred to as the Company), by purchase and merger acquired all of the property of a local corporation, the "Houston Home Telephone Company," and duly accepted an ordinance by which the City approved the merger. This ordinance contained the provision that the Company " agrees that it will not increase rates as at present charged by it for service in the City of Houston, unless it appears upon a satisfactory showing . . . that there exists a necessity for an increase of charges, in order that the said company may earn a fair return upon its *capital actually invested* in the Houston plant."

It is now contended by the City that the acceptance of this ordinance estops the Company from asserting that the value of its plant, as of the date of the inquiry, and not the cost of it—the " capital actually invested ",—shall be the basis for rate-making, but the Company contends that the quoted provision of the state constitution rendered the City incapable of contracting by such an ordinance and that therefore it is void and not binding on either party.

The master, treating the merger ordinance as void, determined the value of the property, used and useful in the operations of the Company, on the basis of its value at the time of the taking of the testimony in 1919, to be $6,000,000; that the Company's total revenues for 1919, computed on the ordinance rates, amounted to $908,258, and that its total expenses were $1,214,462, thus showing

a net loss to the Company for the year of $306,204, without making any allowance for interest upon the investment.

Upon exceptions to the report of the master, the District Court decided that the Company was bound by the merger ordinance of 1915 to accept the cost of its plant, as distinguished from its value at the time of the inquiry, as the basis for rate-making, and thereupon reduced the valuation of the Company's property to $4,571,567. The court also reduced the allowance of " reserve for annual depreciation ", as found by the master, from $348,150 to $289,380. After making these and some other deductions the court, nevertheless, found that the operating expenses of the Company, not making any allowance for return on the investment, exceeded the income during 1919 by the sum of $247,434. We fully agree with the District Court that there is a clear preponderance of the evidence in favor of the conclusion that the ordinance rate was confiscatory, and the decree of the court will, therefore, be affirmed.

The decree enjoining the City from enforcing the rate ordinance provides, that the City shall have the right to apply for a modification of it whenever it shall be made to appear that, by reason of change of circumstances or conditions, the rates prescribed by the ordinance (of 1909) are sufficient to yield a fair return upon the capital of the Company actually invested, and also that the decree is without prejudice to the rights of the City to exercise its rate-making power within constitutional limits. This form of decree and the change in business conditions since it was entered render it so probable that there will be further controversy as to what are reasonable rates for telephone service in the City, in which it will be important to determine what the legal basis is for determining the value of the Company's property, that we think it proper to consider several of the assignments of error presented

9545—23—21

by the appeal and cross appeal, although our conclusions with respect to them will not modify the result we have stated of this review.

While the City's assignments of error are numerous, in the brief they are frankly limited to three:

First: That the division of receipts derived by the Company from long distance tolls, approved by the court, was not a fair or adequate one.

The Company not only operated the Houston local exchange but it owned and operated long distance toll lines, connecting the local exchange with various towns and cities in Texas and several other States. The property used in the long distance service, which was not also used in the local service, was not included in valuing the investment for determining local rates, but, as the local lines were used to the extent of permitting a subscriber to connect from his home or office station with the long distance lines through the long distance station, the Company, in practice, and for the purposes of this suit, credited the local exchange with 25% of the long-distance toll revenues received from calls originating in Houston as compensation for the use made of the local plant in rendering long distance service. The City contends that this allowance is not enough, but that it should be at least 60%. Both the court and the master found: that the proportion so credited from long distance tolls was greater than that allowed to any one of eight independent exchanges in the State of Texas by independent long-distance toll lines with which they were connected; that the amount is larger than that paid by the Company to over 300 independent exchanges with which it has like connections; and that the allowance is one customarily approved by state commissions throughout the country. Compared with the formidable and very convincing evidence on which these conclusions rest, the testimony introduced by the City is meager and unsatisfactory, and we agree

with the District Court that upon the record before us the allowance was reasonably sufficient.

Second and Third: The American Telephone & Telegraph Company owns substantially all of the stock of the Company and a large majority of the stock of the Western Electric Company. From the American Telephone & Telegraph Company the Company leases its instruments and secures their maintenance and renewal and from the Western Electric Company it obtains the greater part of its equipment and supplies used in operating its local exchange. It is contended by the City that no fair disclosure was made of the profits made by the furnishing companies on the instruments and on the material and supplies so furnished and that, for this unique reason, the Company should not be heard in a court of equity and the case should be dismissed. It is true that the Company did not introduce proof to show what the profits of the two companies were, either upon the business done with it or on their entire business, but it did introduce much evidence tending to show that the charge made and allowed for the services rendered and supplies furnished by them was reasonable and less than the same could be obtained for from other sources. Under the circumstances disclosed in the evidence, the fact that the American Telephone & Telegraph Company controlled the Company and the Western Electric Company by stock ownership is not important beyond requiring close scrutiny of their dealings to prevent imposition upon the community served by the Company, but the court recognized and applied this rule. Here again, the evidence introduced by the City was meager and indefinite, while that of the Company was exceptionally full and complete, and both contentions must be denied.

In its cross appeal the Company assigns as error the holding of the District Court that the merger ordinance of

1915 obliges the Company to accept the cost of its physical plant as the basis for rate-making, instead of the usual basis, the value, at the time of the inquiry, of the property used and useful in operating the plant. (*Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 52; *Minnesota Rate Cases*, 230 U. S. 352; *Denver* v. *Denver Union Water Co.*, 246 U. S. 178). The asserted reason for this contention is that the merger ordinance of 1915 and the acceptance of it by the Company did not constitute a contract binding upon either the City or the Company, but that, though contractual in form, it was void under the provisions of the state constitution and the decisions cited, *supra*. In its answer the City avers that it did not and could not, by that ordinance or otherwise, limit its rate-making power for the future. But, notwithstanding this agreement of the parties that the merger ordinance was void, the court held that the Company, having accepted and acted upon it, was estopped to claim that it was not bound by its terms. Misrepresentation not being involved, mutuality was necessary to any estoppel growing out of this transaction, and while thus asserting that the ordinance is void as to itself the City may not successfully assert that its adversary is bound by the acceptance of it. We think that neither party was bound by the ordinance and the acceptance of it, that the District Court fell into error, and that the proper base for rate-making in the case is the fair value of the property, useful and used by the Company, at the time of the inquiry.

The master recognized " going concern value " as an element to be taken into consideration in determining the value of the Company's property and for this allowed $765,000, which was included in the value which he fixed upon the plant. The court, however, changing the base from the value of the property to the cost of it, concluded that under the agreement in the merger ordinance no such allowance should be made, but stated, incidentally, in

its opinion, that if it had made such an allowance it would not have been in excess of one-half the amount allowed by the master. To thus reject going concern value is assigned as error by the Company.

Whether going concern value should be considered and allowed at all in determining the base for rate making, and if allowed what the amount of it should be, depends upon the financial history of the Company (*Galveston Electric Co.* v. *Galveston,* 258 U. S. 388), and it is impossible for us to determine whether the requisite history for deciding this question is to be found in the three large volumes of the transcript of the record of the case, containing 1664 pages, without reading the whole of it.

Equity Rule No. 75 provides that evidence to be included in the record shall not be set forth in full but shall be stated in a simple and condensed form, and Rule 21 of this court provides that briefs of the argument shall be filed in each case, with references to the pages of the record and the authorities relied upon in support of each point. The first of these rules has been wholly ignored in the printing of this record and the second has been so neglected in the preparation of the briefs that it is impossible for the court to consider this question except by itself reading and briefing the voluminous record. This we cannot consent to do, and for the reason that the record and briefs are not prepared in conformity with the rules prescribed by this court, we decline to consider this assignment of error.

The other questions argued in the briefs must necessarily be presented so differently on any further hearing of the issues involved that discussion of them here would be profitless. The decree of the District Court must be

*Affirmed.*

MR. JUSTICE BRANDEIS took no part in the consideration or decision of this case.