**NORTHWESTERN BELL TELEPHONE CO. v. SPILLMAN, Atty. Gen. of Nebraska, et al.**

(District Court, D. Nebraska, Lincoln Division. June 11, 1925.)

No. 182.

**1. Courts ⊚⟹508(1)—Telephone company may bring suit in federal court to enjoin enforcement of rates of railway commission.**

A telephone company has right to resort to federal court to enjoin enforcement of inadequate rates fixed by State Railway Commission, notwithstanding its right of appeal, under Comp. St. Neb. 1922, § 5491, to state Supreme Court from findings and order of commission.

**2. Telegraphs and telephones ⊚⟹33(1)—Payment of percentage of gross revenue to other company not improper item of expense.**

In suit by telephone company to enjoin interference with its charging rates sufficient to yield adequate return, payment of 4½ per cent. of gross revenue annually to American Telegraph & Telephone Company for exchange service, under written contract, *held* not shown improper expense.

**3. Telegraphs and telephones ⊚⟹33(1)—Contract presumed within proper discretion of officers.**

Contract of telephone company for exchange services will be presumed made in exercise of proper discretion of its officers.

**4. Telegraphs and telephones ⊚⟹33(1) —New switching equipment proper part of valuation.**

A telephone company is entitled to some latitude in adopting new methods, and new machine switching equipment, providing new switching method, which has passed purely experimental period, and which operates satisfactorily, though never before tried on a large scale, is properly allowed as part of valuation of telephone plant.

**5. Telegraphs and telephones ⊚⟹33(1)—Master's allowance for charges for depreciation, sustained.**

In suit by telephone company to enjoin interference with its charging rates sufficient to yield adequate return, master's allowance for depreciation *held* supported by evidence as against the very general criticism that method of arriving at depreciation was foreign to proper methods.

**6. Telegraphs and telephones ⊚⟹33(1)—Officers allowed discretion in determining number of employees and wages.**

Officers of telephone company must be allowed to exercise business judgment in deciding what employees are necessary and what is reasonable compensation for them, and the similar expenses of other companies cannot furnish standard for determination of reasonable operating expenses in fixing adequate rates.

**7. Constitutional law ⊚⟹70(1)—Making rates legislative function.**

The making of rates for telephone company is a legislative and not a judicial function.

**8. Telegraphs and telephones ⊚⟹33(1)—Court not authorized to establish reasonable rate.**

In suit by telephone company to enjoin enforcement of rates, established by Railway Commission, and interference with its charging rates sufficient to yield adequate return, court *held* not authorized to determine proper rates or proper per centum, in view of Comp. St. Neb. 1922, § 5520, but inadequate rates established by commission may be determined unreasonable, in which case company is entitled to fix reasonable rates until establishment of new rates by commission.

**9. Telegraphs and telephones ⊚⟹33(1) — Enforcement of unreasonable rates enjoined.**

Enforcement of rates prescribed by Railway Commission, causing rate of return much lower than that recommended by master on hearing to enjoin enforcement thereof, and which were below that which answer of commission admitted was fair rate, will be enjoined as unreasonable and confiscatory.

In Equity. Suit by the Northwestern Bell Telephone Company against O. S. Spillman, individually and as Attorney General of State of Nebraska, and H. G. Taylor and others, individually and as persons constituting the Nebraska State Railway Commission, to enjoin the enforcement of the rate order of the Railway Commission and the interference with the plaintiff's charge of adequate rates. Decree for plaintiff.

Edgar M. Morsman, Jr., F. E. Randall, and Alan J. McBean, all of Omaha, Neb., for plaintiff.

O. S. Spillman, Atty. Gen., for the State of Nebraska.

Hugh La Master, Asst. Atty. Gen., for defendant Nebraska State Railway Commission.

MUNGER, District Judge. The Northwestern Bell Telephone Company, the plaintiff herein, made an application to the Nebraska State Railway Commission for leave to increase rates charged for intrastate service to its patrons. After extended hearings, an order was made allowing a portion of the increases and denying others and reducing some rates which were being charged. The plaintiff began this suit, seeking to enjoin the enforcement of the order of the Railway Commission, and seeking to enjoin the defendants from interfering with its charg-

ing rates sufficient to yield it a return of 8 per cent. on its property used in such service. The case was referred to a special master, and to the extended report which he has made exceptions have been filed. The case has been submitted for final hearing upon this report and the exceptions thereto.

[1] The defendants claim that the case should not be decided upon the facts as to the rates, because the plaintiff is given the right by section 5491 of the Compiled Statutes of Nebraska 1922, to appeal from the findings and order of the Railway Commission to the Supreme Court of Nebraska. The nature of the appeal granted by this section of the statutes was considered by the Supreme Court of Nebraska in Hooper Telephone Co. v. Nebraska Telephone Co., 96 Neb. 245, 147 N. W. 674, and it was held that that court, in the hearing of an application under this section, could exercise only judicial powers. The right to resort to that court does not exclude the right to review the decision of the Railway Commission by a suit of the nature of this one in this court. Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Commission (D. C.) 292 F. 139; Pacific Tel. & Tel. Co. v. Cushman (C. C. A.) 292 F. 930. It is also claimed that the case as now presented was not so presented to the Railway Commission, and therefore that this court may not enter a decree for the plaintiff. Section 5520 of the Compiled Statutes of Nebraska 1922, hereinafter quoted, requires an application for a change of rates by a common carrier to be first presented to the Railway Commission and permission to be obtained therefor before any change is made. It is not claimed that an application was not made, but that some features of the evidence now presented were not presented at the hearing before the Railway Commission. The variance between the cases presented in the two hearings is not deemed to be material.

At the hearing there was a stipulation as to values of the plaintiff's property, which has been accepted by the parties as eliminating the question of the proper valuation, as a base on which rates are to be computed, except as to the value of machinery used for switching in the Omaha office of the plaintiff. The application of the plaintiff was for an increase in both toll and exchange rates. The Railway Commission granted substantially what was asked in the increase of toll rates, and this controversy is now chiefly concerned with the question of the exchange rates of the plaintiff. As to these rates, the extended and instructive briefs and arguments have covered many topics, but the defendants' principal exceptions are conceded to relate to the master's findings on five different subjects.

[2, 3] The first is the finding that the amount of 4½ per cent. of the gross revenue of the plaintiff, paid annually by the plaintiff to the American Telegraph & Telephone Company, in pursuance of a written contract, is a proper item of the plaintiff's expenses. The defendants have criticized this payment because the close relationship between the American Telegraph & Telephone Company and the plaintiff may overburden the plaintiff with an undue expense account for the benefit of the American Telegraph & Telephone Company. This subject and this danger have been considered in many other cases, and it has been held that such a relationship between the two companies may require a close scrutiny of the intercorporate dealings. But the final question in a case of this nature is not the possibility of overreaching, nor the amount of scrutiny required, but whether in view of the facts, the expense item is or is not a proper one. That the American Telegraph & Telephone Company furnishes services and property to the plaintiff under this contract is not disputed, nor is there any real dispute that they are of substantial value. The presumption is that this contract was entered into in good faith and in the exercise of a proper discretion by the officers of both corporations. To overcome this presumption, it was incumbent on the defendants to show that the contract was not made in the exercise of a proper discretion by the plaintiff's officers. If it imposed an unreasonable charge upon the plaintiff for the services and property to be furnished, that would be a strong circumstance to show that the amount paid was not paid as the result of the honest judgment of the plaintiff's officers, but, if the amount was fair and reasonable, it could not be omitted as a proper item of expense, simply because it was made to a corporation which might have dominated the action of the plaintiff's officers. Houston v. Southwestern Tel. Co., 259 U. S. 318, 42 S. Ct. 486, 66 L. Ed. 961; S. W Tel. Co. v. Pub. Serv. Comm., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807; Indiana Bell Telephone Co. v. Public Service Comm. (D. C.) 300 F. 190; State v. Southwestern Bell Telephone Co., 115 Kan. 236, 223 P. 771; Southern Bell T. & T. Co. v. Railroad Commissioners (D. C.) 299 F. 615; Chesapeake & Potomac Telephone Co. v. Whitman (D. C.) 3 F. (2d) 938. There was no substantial evidence of

fered on behalf of the defendants upon the question of the unreasonableness of this charge of 4½ per cent. of the gross annual earnings of the plaintiff. On behalf of the plaintiff, there was much testimony to support the rate of charge as less than the reasonable value for the services and property furnished under the contract. In this condition of the record, the defendants' exceptions to the master's allowance of this item cannot be sustained.

[4] The second question presented by the defendants is an allowance, as a part of the valuation of the plaintiff's plant, of the value of the machine switching equipment used in the plaintiff's office at Omaha. The defendants' claim is that this machine switching is a new process, not fully proved, and their exception urges that a part of the cost of it should be deducted, and that the expense of adapting it to the Omaha Exchange property should be borne by the American Telegraph & Telephone Company No basis is given for any division of this item. It appears that this method of switching has passed the purely experimental period, has commended itself to telephone engineers, and, while the Omaha office is one of the first to attempt a trial of it on a large scale, it operates satisfactorily. The plaintiff is entitled to some latitude in adopting new methods, and, if the use of this equipment is a reasonable exercise of judgment by the plaintiff's officers, and not obviously wasteful, the item cannot be disallowed. S. W Tel. Co. v. Pub Serv Comm., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807; Consolidated Gas Co. of New York v. Newton (D. C.) 267 F. 231.

[5] The defendants except to the master's allowance for charges for depreciation. The methods of arriving at a proper charge for depreciation are discussed, and many abstract questions of law relating to this vexed subject are argued, but the amount to be allowed in this case is chiefly a question of fact Upon that issue there was offered by both of the parties the opinions of expert accountants and engineers. These witnesses have detailed the methods by which they arrived at an allowance. The master's findings are supported by testimony, and the exceptions are quite general. It is impossible to overthrow these findings for the very general criticism levelled at them by the defendants. The claim seems to be that the methods of plaintiff's witnesses were so foreign to the proper methods that all of the testimony on behalf of the plaintiff on this subject, or at least as to the amount of deprecia-

tion, should be disregarded While some of the criticisms seem to have some basis, not enough error is shown to invalidate the findings of fact on this subject. Nor is it necessary in this case to review various legal theories presented as to the elements of a depreciation account and the proper uses of a fund realized from a depreciation account.

[6] The defendants claim that the master erred in allowing certain operating expenses of the plaintiff which the defendants claim to be excessive. The expenses that are questioned relate to the number of employees and to the wages and salaries paid to them. A witness of the defendants, by means of a series of studies of the number of employees and of the amount of wages paid by some other telephone companies, as compared to the number of employees of the plaintiff and to the wages paid to them, deduces the conclusion that a large saving could be effected by the plaintiff. The evidence shows that very many differences in conditions exist between the services required of the employees of the several companies, and these differences are so great that one may not be used as a standard for the other. The officers of the plaintiff must be allowed to exercise business judgment in deciding what employees are necessary to the conduct of the business and what is a reasonable compensation for them. There is no evidence of any abuse of discretion in these matters. S. W. Tel. Co. v. Pub. Serv. Comm., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L R. 807; Consolidated Gas Co. of New York v. Newton (D. C.) 267 F. 231; Havre De Grace & Perryville Bridge Co. v. Towers, 132 Md. 16, 103 A. 319.

[7-9] The master found that the plaintiff was entitled to a rate of return of 7½ per cent. on the value of its property (plus a working capital) used in rendering telephone service in Nebraska. The defendants except to this finding, because 7 per cent. is an ample return. The plaintiff excepts because the master should have found a rate of return of 8 per cent. Upon the basis of the stipulated value of the plaintiff's property devoted to the service in question, and the further basis of the revenue and expenses as found by the master and herein approved, it is undisputed that the net return to the plaintiff on the property involved is, and will probably continue to be, less than 5½ per cent. per annum, and that, if the increases asked for by the plaintiff had been granted by the state Railway Commission, the rate of return would have probably been less than 6½ per cent. In view of these facts, it does not seem

necessary to determine whether or not 7½ per cent. as a rate of return is confiscatory. The rates prescribed by the commission cause a rate of return much lower than the rate the master commends, a rate below that which the answer of the defendants admits is a fair rate, and one which, in the light of the decisions, and of the testimony in this case, must be regarded as unreasonable and confiscatory.

It results, from what has been said, that a decree must be entered enjoining the enforcement of the order of the state railway Commission. The plaintiff has asked that the decree also enjoin the defendants from interfering with the plaintiff's charging such rates for telephone service rendered by it in the state of Nebraska, as will produce to plaintiff a return of approximately eight per cent. on the value of its property used in rendering such service. The master has made a recommendation of a decree allowing the plaintiff to charge rates free from molestation by the defendants, which will allow plaintiff a rate of return on its property of 7½ per cent. The making of rates is a legislative and not a judicial act. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Newton v. Consolidated Gas Co., 258 U. S. 165, 42 S. Ct. 264, 66 L. Ed. 538; City of Minneapolis v. Rand (C. C. A.) 285 F. 818; City of Des Moines v. Des Moines Gas Co. (C. C. A.) 264 F. 506; 2 Elliott on R. R. (2d Ed.) 691; 10 Corp. Jur. 432. A decree which should authorize the rates to be charged in the future would be clearly the exercise of legislative power and not a decision upon the validity of a rate which has been prescribed or adopted. The rates which are now in force are in force by acts of the plaintiff or by order of the state Railway Comission. Section 5520 of the Compiled Statutes of Nebraska 1922 provides as follows: *"Changing Rates.* It is hereby declared to be unlawful for any railway company or common carrier to change any rate, schedule or classification until application has been made to the railway commission and permission had for that purpose. Any railway company or common carrier violating this provision shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding ten thousand dollars. (1907, p. 339; Ann. 10663; Comp. 4727n; R. S. 1913, 6158.)"

The court may not, in the face of this statute, grant the right to the plaintiff to change its rates generally, in order that it may earn a fixed per cent. upon its investment. Rates that are in force may not be changed, unless application has been made to the commission for that purpose. Similar statutes have been held valid. State v. Chicago, & N. W. Ry. Co. (Neb.) 198 N. W. 670; St. Clair Borough v. Tamaqua & Pottsville E. Ry. Co., 259 Pa. 462, 103 A. 287, 5 A. L. R. 20; 10 Corp. Jur. 406, 409. If the hearing of such an application causes delay, the plaintiff has a remedy against daily confiscation by seeking an injunction pending final decision by the commission. But the effect of the injunction to be granted in this case is to set aside the exchange rates fixed in the commission's order of November 4, 1922; and thereafter there will be no legal rates prescribed by the commission in place of these exchange rates. Until the commission shall have adopted new rates, the plaintiff has the right to fix its own rates in place of the rates so enjoined, subject, of course, to the general requirements of law that they be just and reasonable and not in violation of any statute. City of Louisville v Louisville Home Telephone Co. (C. C. A.) 279 F 949; Emporia Telephone Co. v. Public Utilities Commission, 97 Kan. 136, 154 P. 262; Walker Bros. Co. v. City of Detroit, 230 Mich. 564, 203 N. W. 492; Kings County Lighting Co. v. Nixon (D. C.) 268 F. 143; 38 Harvard Law Review, 225–231.

The decree will not attempt in advance to determine a percentage of return upon the investment which may be earned by the plaintiff, because such an order would fix the rates which might be charged by the plaintiff. The question of a proper rate of return can be presented when an actual rate of return has been established. A decree will be entered accordingly.