## BUCKEYE COTTON OIL CO. v. RAGLAND et al.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1926. Rehearing Denied February 22, 1926.)

No. 4536.

**1. Courts ⬤═356—Transcript of testimony of all witnesses in question and answer form held improper (Equity Rule 75, par. b.)**

Transcript of testimony of all witnesses in question and answer form, contrary to court order that all testimony included, except that of one witness, be set forth in strict compliance with Equity Rule 75, par. b, *held* improper, though order allowing appeal required that entire testimony of each witness, whose testimony was included, be transcribed.

**2. Courts ⬤═356—Equity rule 75 does not contemplate order to send up all testimony in question and answer form, being designed to prevent such record.**

Equity rule 75 does not contemplate that trial court will order all testimony sent up in question and answer form, but was designed to prevent imposition of such a record on appellate court.

**3. Nuisance ⬤═36—Decree enjoining operation of mill so as to throw out lint in "appreciable," instead of "unreasonable," quantities, held not injurious to defendant.**

Decree enjoining operation of cotton oil mill so as to throw out lint in "appreciable," instead of "unreasonable," quantities, *held* not injurious to defendant claiming that, since making repairs, no lint could escape; quoted words thus meaning practically same thing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appreciable.]

**4. Nuisance ⬤═35—Award for damages to realty by lint from cotton oil mill held warranted by pleading.**

Prayer for general relief and facts stated in bill *held* to warrant award for damages to realty by lint thrown out by nearby cotton oil mill.

**5. Nuisance ⬤═33—Evidence held to show lint from cotton oil mill caused damage to health.**

Evidence *held* to show that lint from defendant's cotton oil mill was cause of damages to plaintiffs' health, though dust from street may have contributed for part of time.

**6. Injunction ⬤═21—Plaintiff's testimony, contradictory of former testimony and declaration in prior suit, held not to preclude relief on ground of perjury.**

Ignorant negress' testimony as to damages asked by her in former suit and conditions at defendant's cotton oil mill in year she moved into house near it *held* not to preclude injunctive relief and damages from lint thrown on her premises on ground of willful perjury, because contradictory of former testimony and declaration in former suit.

**7. Witnesses ⬤═397—Plaintiff held not unworthy of belief because she signed erroneous affidavit as to cause of conditions complained of.**

In suit to enjoin operation of cotton oil mill and delinting plant, plaintiff *held* not unworthy of belief because she signed affidavit, prepared by counsel, that lint and dust came from delinting plant, instead of oil mill, in erroneous belief that such plant was cause of conditions complained of.

**8. Nuisance ⬤═50(7)—$150 damages to realty and $1,500 for personal discomfort from lint from cotton oil mill held not excessive.**

$150 for damages to realty, and $1,500 for personal discomfort and physical suffering caused by operation of cotton oil mill so as to throw lint on plaintiff's premises, *held* not excessive, though plaintiff's health was not permanently impaired.

**9. Nuisance ⬤═50(7)—$5,000 to child for invalidism from lint from cotton oil mill held not excessive.**

$5,000 damages to school girl for chronic bronchitis and other respiratory ailments, underdevelopment, and practical invalidism, caused by lint thrown on premises occupied by her from defendant's cotton oil mill, *held* not excessive.

**10. Nuisance ⬤═26—"Coming to nuisance" doctrine inapplicable where mill was not located in exclusively manufacturing district.**

"Coming to a nuisance" doctrine did not apply, where cotton oil plant, in operation when persons complaining of lint therefrom moved into house near it, was not located in exclusively manufacturing district.

**11. Witnesses ⬤═394.**

Character testimony is inadmissible to sustain self-contradicted witness.

**12. Witnesses ⬤═397.**

Contradiction of statement in or out of court does not necessarily imply perjury, but may be attributed to faulty memory.

Appeal from the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Consolidated suits by Mary Ragland, and by Mildred Ross, a minor, by Mary Ragland, her next friend, against the Buckeye Cotton Oil Company. Decrees for plaintiffs, and defendant appeals. Affirmed.

Wm. H. Watkins, of Jackson, Miss. (Watkins, Watkins & Eager, of Jackson, Miss., and Dinsmore, Shohl & Sawyer, of Cincinnati, Ohio, on the brief), for appellant.

S. D. Redmond and Virgil Howie, both of Jackson, Miss. (Howie & Howie, of Jackson, Miss., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. In September, 1923, Mary Ragland filed her bill of complaint against the Buckeye Cotton Oil Company, in which she averred that she was the owner of a lot, upon which she had resided for 13 years, in Jackson, Miss., on the south side of Monument street; that on the north side of the street, immediately opposite her home, and about 40 feet away, defendant company had and operated a cotton oil mill and delinting plant in such manner as to cause dirt, dust, lint, and cotton fiber to be thrown and to fall on her lot and into her house, to her damage and to the injury of her health. Mildred Ross, a minor, by Mary Ragland, her next friend and foster mother, at the same time filed a bill in which she averred that she lived in the home of Mary Ragland, and that her health had become permanently impaired by reason of the method of operations carried on at defendant's plant. Both bills prayed for injunction and damages, as well as for any appropriate general or special relief; and were consolidated for trial. On November 10, 1923, after a personal visit to the premises, the district judge granted a temporary injunction against operations as conducted at the oil mill, but refused to interfere with the delinting plant, because he found from a personal inspection that the latter was not in operation, but had been dismantled.

The trial resulted in separate final decrees from which the Buckeye Cotton Oil Company appeals. The decree in Mary Ragland's case enjoins defendant from operating its oil mill in such manner as to throw dust, dirt, or lint in appreciable quantities on plaintiff's premises, and awards to plaintiff $150 as damages to her real estate, and $1,500 as actual damages for personal discomfort, physical pain, and suffering sustained since March 1, 1920, the date of a former judgment for $300 in her favor in a similar suit against the same defendant. The other decree awards to Mildred Ross $5,000 as damages for personal discomfort, physical pain and suffering, and injury to her health; but injunction was denied as unnecessary, because injunction had been issued in the case of Mary Ragland, the owner of the property.

[1] The evidence was taken before a commissioner who did not make any findings of fact. The district judge ordered that the testimony of Mary Ragland be sent up on this appeal in question and answer form, but that all other testimony included at the request of counsel be set forth in strict compliance with paragraph (b) of Equity Rule 75. These instructions were ignored, and the statement of the evidence is nothing more than a transcript, containing more than 900 printed pages of stenographic notes, which purport to contain the testimony of all the witnesses in question and answer form. It also contains, as might be expected, a mass of immaterial matter such as preliminary questions and answers, repetitions, comments of counsel, and colloquies between them and the commissioner. We are now invited to separate the wheat from the chaff. We are expected to select out the testimony that is material in order that we may determine whether assignments of error based upon it are well taken. It is true that in the order allowing an appeal it is required that, "where the testimony of any witness, or witnesses, is included in the præcipe of counsel on either side, the testimony of the witness, or witnesses, be transcribed in its entirety." However, it hardly can be contended that this order was intended to displace the previous requirement, which meant that the testimony should be stated in a simple, concise, and narrative form, and in no event did it contemplate an inclusion in the transcript of anything but testimony.

[2] We are of opinion that equity rule 75 does not contemplate that the trial court will order all the testimony in a case sent up in question and answer form. If particular answers of a witness are subject to different interpretations, the questions which elicited such answers frequently aid in determining which interpretation is correct. For that reason the rule provides, by way of exception, "that if either party desires it, and the court or judge so directs, any part of the testimony shall be reproduced in the exact words of the witness." That rule was designed to prevent the imposition of such a record as this upon an appellate court. Newton v. Consolidated Gas Co., 42 S. Ct. 264, 258 U. S. 165, 66 L. Ed. 538; Houston v. Telephone Co., 42 S. Ct. 486, 259 U. S. 318, 66 L. Ed. 961. It would not serve its purpose if it could be ignored at pleasure, and be supplanted by the easier, though more expensive, method of printing everything that is said by anybody connected with the case during the taking of testimony. We will not enforce the rule in this case, but only for the reason that counsel might have construed the order allowing the appeal to authorize the record in its present shape.

Defendant's cotton oil mill has been lo-

cated upon its present site since 1908. It is not situated in a strictly manufacturing district. Mary Ragland moved into her present residence in 1910, taking with her Mildred Ross, who at that time was about 15 months old. They have resided at the same place ever since. From some time not definitely fixed by the testimony, perhaps from the beginning, defendant has used what is called the "cyclone system" at its oil mill. Lint from cotton seed is taken from the gin to what is called a "collector" or "cyclone" through a large metal tube or conveyor about 6 feet in diameter by means of a fan in the conveyor midway between the gin and the collector. This fan is about 70 inches in diameter and is propelled at from 500 to 600 revolutions a minute. The lint is forced by the suction of air from the gin to the fan and is blown from the fan to the collector, where it is intended that it shall drop through an opening at the bottom. An opening is provided at the top for the escape of air. When the opening at the bottom of the collector is choked up, the fan forces the lint out through the top. Mary Ragland testified that lint and lint dust are blown over her yard and into her house, during the season of the year in which the mill is operated, continuously day and night, and that the dust is so fine that it gets into her house, onto her clothing, and into her food even when the doors and windows are closed. She claims that this condition has existed to some extent since 1910, and has gradually grown worse. In corroboration, she introduced numerous photographs which go far to sustain her testimony as to conditions existing at the time these suits were instituted. In behalf of defendant testimony was introduced to the effect that conditions shown by these photographs were such as existed only when a breakdown or choke up occurred at the mill, and did not represent normal conditions. Defendant claims that since repairs were made, in compliance with the order of the court, neither dust nor lint escapes in any appreciable quantities. However, defendant's superintendent admitted that at its mill, as operated prior to repairs which were made after suit was brought and temporary injunction issued, there was always a little "haze" of lint or lint dust coming out at the top of the cyclone or collector.

The evidence of physicians called by plaintiffs was to the effect that both Mary Ragland and Mildred Ross were suffering from chronic bronchitis and other respiratory ailments; that Mildred Ross was under-

developed, undersized, and practically an invalid. Physicians called by defendant testified that plaintiffs appeared to be in fairly good health, but the examinations they made were not very thorough, and in the main their testimony was directed to sustain defendant's theory that the condition of health of both plaintiffs could have been caused by dust from Monument street. That street was paved with pyrites, but the evidence fairly shows that during a drought in 1923 that street was very dusty. Various contradictions were shown between Mary Ragland's testimony in this case and in the case she had against defendant in 1920. They relate principally to the time when she first complained of conditions at defendant's mill. In this case she testified that in her former suit she only asked for damages to her house, and did not claim damages for injury to her health; but her declaration in the earlier suit contained an allegation that in addition to injury to her property, she was "forced to continually breathe and inhale this dust and dirt, much to her physical injury." In an affidavit in support of her application for a temporary injunction, she stated that the delinting plant was not built until 1915, and that until then the neighborhood in which she lived was free from lint and dust from the mill. In giving her testimony before the commissioner, she stated that lint and lint dust were thrown upon her premises from about the time she moved there in 1910.

Mildred Ross testified that in the school year beginning in the fall of 1923 she had been absent from school about two months on account of the condition of her health; but her teacher, Betty Marino, a witness for defendant, testified that Mildred Ross had been absent only seven days, and appeared to be in good health. Betty Marino was sought to be impeached by two witnesses who stated that she told them that she testified as she did through fear of losing her position. Thereupon defendant offered to prove by several witnesses that Betty Marino's reputation for truth and veracity was good; but the District Court, upon exceptions duly taken and reserved, held that such evidence was inadmissible.

Defendant's contentions in support of its appeal are: That at most defendant should have been enjoined from operating its mill so as to throw out lint in unreasonable quantities instead of in appreciable quantities; that it was error to award anything for damages to Mary Ragland's real estate because such damages were not sued for; that it was not shown that any damage to

health suffered by either plaintiff was attributable to lint, since it could equally as well have been caused by dust from the street; that the damages awarded are excessive; that all claims were barred because defendant's mill was operating at its present location when plaintiffs took up their residence across the street from it; and that the court erred in excluding testimony of the good reputation of the witness Betty Marino for truth and veracity.

[3] Defendant claims that since it made repairs to its mill in 1923, it is impossible for lint to escape at all. It therefore would seem to appear that "appreciable" and "unreasonable," as used in the decree appealed from, mean practically the same thing. At least, it does not appear that defendant has been injured by the wording of the decree.

[4] There was a prayer for general relief, and facts were stated which entitled Mary Ragland to recover for damage done to her house. This we think was sufficient. 10 R. C. L. 422.

[5, 6] Of course, it is true that if plaintiffs had not gone any further than to show injury, and had left it uncertain whether that injury was caused by lint from the mill or dust from the street, they would not have been entitled to recover. But it is hardly open to doubt that lint was the cause of whatever damages plaintiffs suffered. The mill was in operation day and night over a long period of years. The street had been paved, and it is not shown for how long a time passing vehicles would scatter dust, nor that dust was thrown from the street during the whole 24 hours of the day. The most defendant can insist on is that dust from the street might have been a contributing cause for a part of the time. Defendant invokes Mary Ragland's former testimony for the purpose of showing that in this case she willfully perjured herself in stating conditions at the mill in 1910, and therefore ought to be denied relief even though she has a meritorious case. It is not a matter to excite suspicion or cause surprise that the testimony of this witness in 1920 should fail to coincide with that given by her three or four years later with reference to the date of an event that occurred long before she first testified about it. The contradictions could well have been attributed by the district judge to forgetfulness; especially in view of the statement of defendant's superintendent that it was impossible to operate its cotton oil mill prior to the making of repairs in 1923 without causing lint and lint dust to escape from the cyclone.

[7] It is not reasonable to suppose that Mary Ragland, who appears from her testimony to be an ignorant negro woman, was familiar enough with the declaration in her former suit to be chargeable with the knowledge that it sought recovery for injury to her health as well as damage to her house. Nor ought she to be held unworthy of belief merely because she signed an affidavit, which was doubtless prepared by her counsel, in support of her application for a temporary injunction, in which it was stated that the delinting plant was not built until 1915, and that the lint and dust came from it instead of from the mill. It is not unusual for honest mistakes to be made in papers which are filed in court. Usually such mistakes are made by the attorney rather than by the client. It is quite apparent from this affidavit that plaintiffs thought the delinting plant was the cause of the conditions complained of. That this was a mistaken idea appears from the order of the district judge, who enjoined operations as carried on at the oil mill, but who upon inspection found that the delinting plant had been dismantled.

[8, 9] We are unable to say that the damages are excessive. While it is true that the district judge did not hear the testimony, yet it appears without contradiction that he was at the home of Mary Ragland when he made a personal visit to defendant's plant. The damages awarded to Mary Ragland are reasonable if only she suffered the discomfort and inconvenience of which she complains, even though her health had not been permanently impaired. If it once be conceded that Mildred Ross' condition is attributable to defendant's method of operating its mill, it cannot fairly be insisted that the damages she recovered are excessive.

[10] Defendant's plant was not located in a district used exclusively for manufacturing purposes. The doctrine of "coming to a nuisance" does not apply. Bispham's Equity (10th Ed.) § 442; 20 R. C. L. 495.

[11, 12] We recognize that there is conflict of authority upon the question whether the testimony of character witnesses is admissible to support the testimony of a witness who has been contradicted, but whose character has not been attacked. In Ford v. United States, 3 F. (2d) 104, we held that such testimony was not admissible to sustain a witness who had merely been contradicted in the testimony he gave at the trial. We think the rule there announced also extends to a case where the contradiction relates to self-contradictory statements of the same witness. 2 Wigmore on Evidence, § 1108. Contradic-

tion of a statement, whether made in or out of court, does not necessarily involve the implication of perjury, but may equally as well be attributed to the faulty memory of a truthful witness.

The decrees are affirmed.