Allen, J.
 

 The utility urges that the commission erred in denying its request for valuation and appraisal of all its property used and useful as of a
 
 *596
 
 date certain. The prices prepared and unit costs submitted by the utility were as of May 1, 1923. The utility contends vigorously that, because the valuation and appraisal which had been made in a former proceeding was considered in the instant case, namely, an appraisal and valuation made in a proceeding dating from June 20, 1921, based on an average of prices for the five preceding years, instead of upon actual prices at or about May 1, 1923, there was no valuation and appraisal as of one certain date. It may be questioned whether the rule announced in
 
 Smyth,
 
 v.
 
 Ames,
 
 169 U. S., 466, 18 S. Ct., 418, 42 L. Ed., 819, relied upon by counsel for plaintiff in error, and long established as laying down the valuation rule in public utility cases, has not been slightly modified by the recent decision of the Supreme Court of the United States in
 
 McCardle et al., Comm’rs.,
 
 v.
 
 Indianapolis Water Co.,
 
 272 U. S., 400, 47 S. Ct., 144, 71 L. Ed., 316, in which Mr. Justice Butler lays down the following rule:
 

 “In. determining the present value of the property of a public utility for rate-making purposes, consideration must be given to prices and wages prevailing at the time of the investigation; and, in the light of all the circumstances, there must be an honest and intelligent forecast as to probable price and wage levels during a reasonable period in the immediate future.”
 

 However, the general rule, even if modified in the
 
 MeCardle case
 
 by that decision’s requirement that future prices be forecast as well as that present prices be considered in valuation of a utility’s property, does not apply in the instant proceeding because of a certain request made by counsel for the
 
 *597
 
 utility with reference to the use of the appraisal and valuation made in the preceding action.
 

 The record shows that, when the Hardin-Wyandot Lighting Company filed with the Public Utilities Commission an appeal from the ordinance enacted on September 19, 1922, by the council of Kenton, regulating the price which the lighting company might charge for electric current in the city of Kenton, counsel for the utility, upon the day set for hearing, appeared before the commission and called attention to the fact that a former proceeding, dating from June 20, 1921, was pending, and that the engineers of the commission in that former proceeding had appraised the same property, the value of which was at issue in the present proceeding. The record further shows that Chairman Poor then made the following statement:
 

 “If the commission has arrived at a valuation of that property for that period of time and there has been no material change in the physical property, I would not see the necessity of the commission having a revaluation made unless it is called for by one side or the other, showing that there hat> been some material physical change. ’ ’
 

 Mr. Martin, counsel for the lighting company, in response to this statement by the chairman of the commission, said:
 

 “Of course, if we could avail ourselves of this inventory and appraisal it would very much shorten the'matter, because I think the commission’s engineers were on that three or four months in making that appraisal, and it would take another engineering company fully as long.”
 

 Mr. Martin further said:
 

 
 *598
 
 “If the commission please, I do not know of anything of the kind in this commission before, bnt in the civil courts we have consolidated cases frequently where there is a like interest between all of the parties, and it strikes me that we can consolidate the advance rate case with this case and avail ourselves of the work already done in that case.”
 

 Chairman Poor then said:
 

 “Now, if it is the'desire of the parties to this proceeding to consolidate the two cases, the commission is willing to entertain a motion to have the two cases consolidated, and, since the commission has done the field work, or the engineers have done the field work, making the appraisal, that we go ahead and complete it and announce the tentative valuation of the property, of course giving both sides an opportunity to protest against that valuation at any time within thirty days. Then we can consolidate them and have the hearing of the two cases at the same time, and the same valuation then would prevail in the two cases, reserving the right to either side to show that the tentative value is wrong in some way. ’ ’
 

 Mr. Martin said:
 

 “If the commission please, I think that is perfectly satisfactory, with this understanding,
 
 *
 
 *
 
 *”
 
 and made a suggestion with reference to the date on which the new rates, if any, should become effective.
 

 The following statements then appear in the record:
 

 “Commissioner Poor: Then there is no need of taking up any more time on this this morning. We will ask our engineering department to get at .this
 
 *599
 
 valuation just as quickly as possible and announce the tentative value, and then, after the announcement of that, if no protests are filed, or if there is one and the valuation is made final, then we can fix a day for the rate hearing.
 

 ‘ ‘ Mr. Price: All right.
 

 “Mr. Brown: If the commission please, then these two cases will be consolidated.
 

 “Chairman Poor: We will treat them as consolidated.
 

 “Mr. Martin: That will give us the benefit of the work of the commission’s engineers in the first case.”
 

 Mr. Martin added:
 

 “But we are trying to use the work that has been done in' the advanced rate case in this case, and I think probably, to make the record clear when the tentative valuation is made and the final valuation is arrived at, that an order in this case be made that that be the tentative valuation and then another order that it be the final valuation in this case, so that the whole record would be in the appeal case as well as part of it in the advanced -rate case. ’ ’
 

 In compliance with this suggestion the two cases were consolidated and" the same valuation was found in each.
 

 However valid the contention of the plaintiff in error might be as to the prejudicial use of this appraisal made in a former proceeding, for the purposes of the instant case, if such use had been made of the appraisal over objection and exception of counsel for the utility, it cannot be valid, when, as appears on this record, plaintiff in error itself, through counsel, orally stipulated with the Public
 
 *600
 
 Utilities Commission that the appraisal made in the earlier case should be used in both cases, that there should be a consolidation of the two proceedings, and that the same valuation be found in each. Under these circumstances, the company has waived its right to contend for the valuation as of a day certain, and this objection is overruled.
 

 The contention is next raised that the commission erred in adopting a valuation made under the so-called “trend” theory; namely, by taking the values of the commodities used by the utility in its operations and striking an average cost of the prices of such commodities over a given number of years. This objection also is overruled for the reason heretofore given; namely, that the plaintiff in error requested the use of the valuation made upon the trend theory in the former case, and hence has waived its right to insist upon a valuation as of the date of May 1, 1923. However, in this instance the use of the. trend system of valuation benefited rather than injured the plaintiff in error.
 

 One of the engineers for the company testified:
 

 “If, instead of taking prices at or about May 1, 1923, we had taken the average prices of the five preceding years, our cost of reproduction would be approximately 5 per cent, greater than it is shown. ’ ’
 

 This testimony was substantiated by certain charts introduced in evidence, which showed the trend of prices over a period of years. The practical result of the use of the trend system of valuation was that the valuation was several thousand dollars more than it would have been if the commission had used prices as of May 1, 1923.
 

 This objection is hence overruled, upon the ground
 
 *601
 
 that the use of the trend system of valuation was not prejudicial in this instance.
 

 A further serious objection made by the plaintiff in error is that the commission failed to include in its valuation property not located in Kenton; this property being the parts of the general .plant situated in Upper Sandusky, Dunkirk, Kirby, and other municipalities. However, there is evidence in the record tending to show that the Upper Sandusky power house was not used and useful in furnishing service in Kenton. Mr. Foster, engineer for the commission, testified that the power house at Upper Sandusky was not taken into consideration because “it would not do any good in Kenton”; and the reasonable conclusion from his evidence is that the Upper Sandusky plant was used during a peak period to help the Kenton power house carry its load in territory outside of Kenton. It is self-evident in a rate controversy involving public utility rates charged in a particular municipality that only property used and useful in furnishing service in such municipality should be valued for the purpose of establishing such rate.
 

 As to that part of the plant located in Upper San-dusky, Dunkirk, and Kirby, an allocation was made by the commission upon the basis of consumption of electric current in Kenton as compared with the electric current consumption in other territory served by the utility. An engineer for the company testified that it would be possible from the records of the company accurately to allocate the costs according to the distribution of energy. It is true that another engineer for the company suggested other methods of allocation. However, the record
 
 *602
 
 shows that the methods suggested could not be employed, owing to the company’s inability to give the necessary data therefor. The engineer for the commission testified that the company had no meters from which facts could be secured for any other basis of allocation than that of allocation according to the distribution of energy, which was the basis employed.
 

 Since the company’s own engineer conceded that the method used was feasible, and since the record shows that the only method possible under the circumstances was employed, this contention of the utility is overruled.
 

 Coming to the most serious question raised by plaintiff in error, it urges that the order of the Public Utilities Commission should be reversed because of the fact that the commission made no allowance for going concern value. The commission did use, as a basis for its valuation, a price in excess of the cost of reproduction new of the property, less depreciation, based on prices at the time of appraisal, for the valuation was based upon prices higher than those existing at the date of the rate hearing. The commission made the following order as a part of its decision:
 

 “Ordered, that the final value of the several classes and kinds of property of the Hardin-Wyandot Lighting Company, used and useful for the convenience of the public in the furnishing of electrical service in the city of Kenton, Ohio, and of said property as a whole, as of August 1, 1921, with the unit prices thereof the fair prices for the period of five years next preceding said day certain, be and hereby
 
 *603
 
 it is ascertained and determined to be as set forth in the following summary, viz.:
 

 Reproduction Description. Value. Depreciation. vF vp vp vp vF VP vp vp Present Value. # # #
 

 ..........$171,806.19 $22,642.05 $149,164.14
 

 Organization, interest, engineering, law expenditures, taxes, and general expenses during construction, and contingencies and omissions, 7 per cent. 10,441.49
 

 Materials and supplies................ 4,089.00
 

 Working capital...................... 6,442.24
 

 $170,136.87
 

 Plaintiff in error urges that the commission should have added to these figures a specific allowance for going concern value. In this record there is no testimony whatever upon which going value could be calculated. One witness merely states that the going value should be 10 per cent., without indicating how he arrives at this figure. The owner of the stock of the company states what he thinks the property is worth in the market, and does not segregate any of that value to going concern. There is no testimony in this case by any one who has examined the books to find out what the going value of the concern actually is. The Supreme Court of the United States, in the case of
 
 City of Houston
 
 v.
 
 Southwestern Bell Telephone Co.,
 
 259 U. S., 318, 42 S. Ct., 486, 66 L. Ed., 961, stated that:
 

 “Whether going concern value should be considered and allowed at all in determining the base for rate making, and if allowed what the amount of it should be, depends upon the financial history of the Company * *
 

 
 *604
 
 No tangible evidence is given in this record of the financial history of the company, and all that is shown is that this is an old established business, which fact would seem, under the cases cited, to militate against plaintiff in error’s contention.
 

 In the words of the Supreme Court of the United States, in the case of
 
 Des Moines Gas Co.
 
 v.
 
 City of Des Moines,
 
 238 U. S., 153, 35 S. Ct., 811, 59 L. Ed., 1244:
 

 “Included in going value as usually reckoned is the investment necessary to organizing and establishing the business which is not embraced in the value of its actual physical property. In this case, what may be called the inception cost of the enterprise entering into the establishing of a going concern had long since been incurred. The present company and its predecessors had long carried on business in the city of Des Moines, under other ordinances, and at higher rates than the ordinance in question established. For aught that appears in this record, these expenses may have been already compensated in rates charged and collected under former ordinances. A.s we have said, every presumption is in f avor of the legitimate exercise of the rate-making power, and it is not to be presumed, without proof, that a company is under the necessity of making up losses and expenditures incidental to the experimental stage of its business. * * *
 

 “When, as here, a long established and successful plant of this character is valued for rate-making purposes, and the value of the property fixed as the Master certifies upon the basis of a plant in successful operation, and overhead charges have been allowed for the items and in the sums already stated,
 
 *605
 
 it cannot be said, in view of the facts in this case, that the element of going value has not been given the consideration it deserves and the appellant’s contention in this behalf is not sustained.”
 

 In
 
 Standard Oil Co.
 
 v.
 
 Southern Pac. Co.,
 
 268 U. S., 146, 45 S. Ct., 465, 69 L. Ed., 890, Mr. Justice Butler says:
 

 “By numerous decisions of this court it is firmly established that the cost of reproduction as of the date, of valuation constitutes evidence properly to be considered in the ascertainment of value.”
 

 Now in this instance the commission found the reproduction cost new, less depreciation of the property, upon a basis of prices higher than as of the date of May 1, 1923, as testified by the utility’s own engineers.
 

 The plaintiff in error, however, contends that the commission, in addition to using reproduction value less depreciation on the basis of prices higher than those prevailing at the time of the inquiry, should have added thereto a specific allowance for going concern. However, we think that this method of valuation gave due recognition to the fact that the property is a going concern, so far as the making of rates is concerned.
 

 In
 
 Cedar Rapids Gas Light Co.
 
 v.
 
 City of Cedar Rapids,
 
 223 U. S., 655, 32 S. Ct., 389, 56 L. Ed., 594, the Supreme Court of the United States holds that, where a court in fixing fair value for rate purposes has taken into account the fact that the plant was in successful operation, it has given adequate consideration to the going concern feature. Now in the case of
 
 Des Moines Gas Co.
 
 v.
 
 City of Des Moines, supra,
 
 the plant of the lighting company was valued,
 
 *606
 
 not upon the mere salvage value- of its separate units, but was given a valuation based upon the reproduction cost of the whole new, less existing depreciation of the complete plant, together with additions for organization, interest, engineering, law expenditures, taxes, and general expenses during construction, and contingencies and omissions. In the
 
 Des Moines case,
 
 a valuation which included these items and contained no separate allowance for going concern was upheld by the Supreme Court of the United States. The instant valuation also was based, not upon the mere salvage value of the separate units, but upon the reproduction cost of the whole new, less existing depreciation of the whole plant, together with additions for organization, interest, engineering, law expenditures, taxes, and general expenses during construction, and contingencies and omissions. Here, as in the
 
 Des Moines case,
 
 the plant is a long-established and successful business; and, sincedhe valuation of the property is made upon the basis that the plant is in successful operation, and the average charges, which correspond to those made in the
 
 Des Moines case,
 
 were allowed for all of the items stated, unless the
 
 Des Moines case
 
 has been overruled by the Supreme Court of the United States we must hold that going concern has been adequately recognized.
 

 It was upon this theory that - the holding in
 
 Cincinnati & Suburban Bell Telephone Co.
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 259, 148 N. E., 817, was based, when this court said- that going value was considered by the commission and properly included in the item denominated “Overheads.” This court said, at page 295 (148
 
 N.
 
 E., 827):
 

 
 *607
 
 “Included in that amount was an allowance for ‘engineering, administrative and legal expenses, liability insurance, taxes and interest during construction.’ All of these entered into the development of the utility’s property and gave it an added value which was not represented in the valuation of the physical property.”
 

 This holding is not inconsistent with the case of
 
 City and County of Denver
 
 v.
 
 Denver Union Water Co.,
 
 246 U. S., 178, 38 S. Ct., 278, 62 L. Ed., 649, for in that case the master, in fixing the value of the physical plant, had not valued the property as an assembled plant; hence a specific allowance was made for going concern value. Neither is it inconsistent with the
 
 McCardle case, supra.
 
 The decision in that case was carefully limited by Mr. Justice Butler, who wrote the opinion, to the peculiar, and what he calls the impressive, facts of the record. The gist of the decision was that the price level adopted by the commission — the average for ten years, ending with 1921 — was too low. The commission’s valuation had evidently been based upon reproduction cost new, less depreciation, but on the basis of ten-year average prices, which were held to be inadequate. The valuation fixed by the district court, which was affirmed by the Supreme Court of the United States, had been arrived at by consideration of the cost of reproduction new, less depreciation, based on prices prevailing at the time of the appraisal, and did not include any additional separate allowance for going concern.
 

 In the
 
 McCardle case,
 
 the commission had fixed the value, of the property at $15,260,000, or at $1,195,000 less than an earlier valuation which the
 
 *608
 
 commission itself had made in the same year. The commission admitted that, if the valuation had been based on the prices at the date of appraisal, the value would have been $20,000,000, exclusive of specific allowance for going value. The use of the valuation of $15,260,000 was enjoined'by the decree of the district court. In that court the commission’s own engineer testified that the reproduction cost new less depreciation on the basis of ten-year average prices, ending in January, 1923, would be $17,000,000, and that on the basis of prices on January .1, 1924, it would be $19,500,000. In these estimates he did not include any specific amount for going value, water rights, or working capital. In the opinion of the Supreme Court, Mr. Justice Butler adverts to the fact that on the basis of prices prevailing January 1,1924, the cost of reproduction, less depreciation, was $19,500,000, and emphasizes the fact that this estimate included nothing for “cash working capital, water rights or going value.” And it is the figure set by the district court, which did not include an allowance for going value, which was affirmed by the Supreme Court of the United States; namely, $19,000,000.
 

 Mr. Justice Butler did state that the evidence was more than sufficient to sustain 9% per cent, for going value in view of the extremely valuable water rights described by the commission in one of its ■valuations, and listed by the commission together with going value; but this language must be read together with his emphatic statement. that the commission had not used reproduction cost new, less depreciation, as a basis of valuation. In fact, the entire decision is bottomed upon the proposition that
 
 *609
 
 a valuation which, does not recognize reproduction cost new, less depreciation, is an improper basis for the valuation of property of a public utility. And this, and nothing more than this, can be read into the McCardle decision, which neither in terms nor in effect overrules the decisions previously cited herein.
 

 It is significant that the
 
 McCardle case
 
 did not mention the following United States Supreme Court rate cases:
 
 Willcox
 
 v.
 
 Consolidated Gas Co.,
 
 212 U. S., 19, 29 S. Ct., 192, 53 L. Ed., 382, 48 L. R. A. (N. S.), 1134, 15 Ann. Cas., 1034;
 
 Cedar Rapids Gas Light Co.
 
 v.
 
 City of Cedar Rapids, supra; Galveston Electric Co.
 
 v.
 
 City of Galveston,
 
 258 U. S., 388, 42 S. Ct., 351, 66 L. Ed., 678;
 
 City of Houston
 
 v.
 
 Southwestern Bell Telephone Co., supra; State of Missouri, ex rel. Southwestern Bell Telephone Co.,
 
 v.
 
 Public Service Commission,
 
 262 U. S., 276, 43 S. Ct., 544, 67 L. Ed., 981, 31 A. L. R., 807;
 
 Georgia Ry. & Power Co.
 
 v.
 
 Railroad Commission,
 
 262 U. S., 625, 43 S. Ct., 680, 67 L. Ed., 1144.
 

 Since these decisions were not mentioned, they of course were not overruled. The failure of the court in four of these important cases to make any specific allowance for going value, and its failure in one of these cases to allow for “cost of establishing the business,” is quite reconcilable with the decision in the
 
 McCardle case,
 
 upon the ground heretofore stated; namely, that the real question in the
 
 McCardle case
 
 was the inadequacy of the price level adopted by the commission for the purposes of its valuation. In the instant case, on the contrary, instead of the price level adopted being too low, it was admitted by the company’s engineer that the
 
 *610
 
 price basis used was in excess of the cost of reproduction new of tbe property, less depreciation, based on prices at the time of the rate hearing.
 

 In the case of
 
 Galveston Electric Co.
 
 v.
 
 City of Galveston, supra,
 
 the Supreme Court of the United States said:
 

 • “Going concern value and development cost, in the sense in which the master used these terms, are not to be included in the base value for- the purpose of determining whether a rate is confiscatory.”
 

 The decision of the lower court was sustained notwithstanding the fact that no going value had been allowed. This case was not overruled nor questioned in the
 
 McCardle case, supra.
 

 Hence this contention of the utility is overruled.
 

 Complaint is further made because the commission included only 7 per cent, for overheads. However, in the inventory and appraisal of the commission’s engineers, there are overhead allowances ranging from 12 per cent, to 22 per cent, upon the various subdivisions contained in the appraisal of the physical property. The 7 per cent, for overheads is calculated upon these overhead allowances of from 12 to 22 per cent, added to the physical values. The percentage thus calculated does not appear to be confiscatory, and hence this contention is also overruled.
 

 The further claim by the utility, that the letter sent to the commission by one of its engineers offered further evidence which it was error on the part of the commission not to admit, cannot be upheld. This was a letter submitting an analysis of the difference between the commission’s valuation and that set up by the engineers for the company.
 
 *611
 
 The letter contains a statement of the issues upon which the engineer for the commission and the engineers for the company disagreed; and its rejection was not prejudicial error.
 

 Proceeding to inquire into the objection that the commission failed to consider in its valuation the construction of a railroad siding subsequent to the time of the appraisal in the former case, we do find, upon examination of the record, that no valuation is made of this siding, and it is conceded by both sides that there should be additional value due to its construction. One of the engineers of the company, the only witness who testified as to the value of the siding, stated that the reproduction cost thereof would be about $2,500. In view of the excess valuation which resulted from the use of the trend prices for a five-year period rather than prices as of May 1,1923, amounting to more than $2500.00, this omission would in no way affect the valuation.
 

 Order of the Public Utilities Commission affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Kinkade, Robinson and Matthias, JJ., concur.