CITY OF BAYTOWN et al. v. GENERAL TEL. CO. OF THE SOUTHWEST.

No. 12526.

Court of Civil Appeals of Texas. Galveston.

Feb. 19, 1953.

Rehearing Denied March 12, 1953.

George Chandler, City Attorney and Shannon L. Morris, both of Baytown, for appellant.

Will Sears, City Atty. and Jack W. Mills, Asst. City Atty. of Houston, for amici curiae, League of Texas Municipalities and Texas City Attys. Ass'n.

Locke, Locke & Purnell and Wayne O. Woodruff, both of Dallas, Reid, Strickland & Gillette and Robert Strickland, both of Baytown, for appellee.

MONTEITH, Chief Justice.

This is an appeal by appellants, City of Baytown, its mayor and city council, from an order rendered by the District Court of Harris County granting appellee, General Telephone Company of the Southwest, a temporary injunction restraining appellants from enforcing an ordinance passed by the city council of Baytown prescribing rates to be charged by appellee for telephone services furnished by appellee within the territorial limits of the City of Baytown, and from interfering with appellee in promulgating, charging and collecting fair and reasonable rates and charges for telephone service in Baytown, Texas, until such time as the city council shall prescribe fair and reasonable rates and charges.

On February 14, 1952, appellee had requested of appellants an increase in rates to be charged by it. Appellants, as the city council of the City of Baytown, and acting as a rate-making body therefor, held hearings on appellee's request, and on August 14, 1952, adopted an ordinance granting appellee an increase in rates but not to the extent requested by appellee. This ordinance became effective immediately.

Appellee thereupon brought this action, in the nature of an application for injunctive relief, as an appeal from the failure of the city council of Baytown to grant the increase in rates requested of them by appellee. Upon a hearing of appellee's application before the 133rd District Court of Harris County, the trial court, without a jury, found, in the order entered, that appellee was being forced to operate its telephone exchange by virtue of an order dated August 14, 1952, at an unjust and unreasonable rate upon the fair value of appellee's property used and useful in furnishing telephone service in the City of Baytown and that such forced operation at an unjust and unreasonable rate of return amounted to a confiscation of appellee's property by appellants and that appellee for these reasons was entitled to a temporary injunction against appellants as prayed for. At this hearing the temporary injunction was granted upon appellee's sworn petition and affidavits. Appellants did not present any evidence or offer any testimony, nor did appellants cross-examine appellee's witnesses who had sworn to the facts contained in appellee's affidavits, although the witnesses were present in court and were tendered for cross-examination.

Appellee, in its petition for temporary injunction, admitted that by virtue of the provisions of the city charter of the City of Baytown, the city council was given and has

the power and duty to determine and fix telephone rates.

The League of Texas Municipalities, a voluntary association of Texas cities, the City Attorneys' Association of Texas, and the City of Houston, presented an amici curiae brief in support of the appeal and in opposition to the judgment rendered by the trial court.

The controlling question presented in the appeal is whether the trial court was justified in granting a temporary injunction and whether he had jurisdiction to do so under the pleadings and proof offered by appellee showing that the rates which appellee is compelled to charge for telephone service were unjust and unreasonable and amounted to a confiscation of appellee's property.

Pending an appeal from the order complained of, the trial court required appellee to post a bond in the amount of $300,000 payable to the City of Baytown to indemnify appellee's telephone subscribers in the event such temporary injunction was dissolved on appeal and the old and lower rates set by the ordinance of August 14, 1952 should be found to be in all things lawful.

Appellants rely in the appeal on four points of assigned error. They contend that the trial court erred in overruling their motion to dismiss appellee's suit and in holding that the trial court had general appellate jurisdiction to entertain appellee's application for injunctive relief, and in holding that the trial court had jurisdiction to make a judicial ascertainment of the telephone rates to be charged by appellee within the territorial limits of the City of Baytown before such fact issue had been presented to appellants for its determination, and in holding that the affirmative relief sought by appellees for higher telephone rates could be granted by the remedy of temporary injunction.

It is undisputed that the City of Baytown is a home rule charter city, operating under a duly and legally adopted charter. The charter provides that "The city council shall have full power, after due notice and hearing, to regulate by ordinance the rates and service of every public utility operating in the City of Baytown." Since a telephone company is a public utility, the question presented is whether or not the trial court had jurisdiction to render the judgment entered.

Appellants contend that since there is no dispute about the facts but only a dispute as to how these facts ought to be interpreted, that this issue is a question of law. They contend that in the absence of a statute, an appeal does not lie from the findings of the duly constituted rate-making body to the courts, citing McQuillin, Muni. Corps., Vol. 12, § 34.160, holding that "An appeal will lie from the fixing of a rate only if provided for by statute", and citing R. R. Comm. of Texas v. Houston & T. C. R. Co., 90 Tex. 340, 38 S.W. 750, 755, which holds, "It is true that the courts have established a rule that the reasonableness and justice of rates fixed by the legislature, or by a commission empowered by it so to do, are ordinarily questions committed to the discretion of those bodies, and not subject to revision by the court; * * *"; and citing Gulf, C. & S. F. R. Co. v. Railroad Comm. of Texas, 102 Tex. 338, 116 S.W. 795.

Appellee, under its counter-points, contends that the question before this Court is whether the trial court abused its discretion in granting appellee a temporary injunction under the uncontroverted facts in this case as proven by appellee and in conditioning the issuance of said injunction upon the posting of adequate indemnification bond by appellee pending the determination of the case on final hearing, and that the facts establishing appellee's right to an injunction are uncontroverted, and that the only question is whether the trial court abused its discretion in its application of the law to these uncontroverted facts.

Appellee urges that the case of Horwitz v. Finkelstein, Tex.Civ.App., 189 S.W.2d 895, error refused, and the cases therein cited, dispose of appellants' appeal in the instant case.

In the Horwitz case, the court held, "We have before us the verified pleadings of both parties joining issues on the material allegations and the judgment of the trial court dissolving the temporary restraining order and refusing the temporary injunction. The record does not contain a statement of facts in any form. The

trial court did not file any findings and none was requested so far as the record shows but the judgment of the trial court recites that it heard and considered evidence and this court must, therefore, indulge all reasonable presumptions that there was sufficient evidence to sustain the trial court's judgment."

It is well settled in this State that the sole question to be determined on appeal in the granting or refusing of a temporary injunction, is whether or not the trial court abused its discretion in entering the order appealed from.

In the case of Bates v. Texas Electric Railway Co., Tex.Civ.App., 220 S.W.2d 707, 710, it is said, "We are not presently concerned with the merits of plaintiff's appeal, our duty extending no further than whether an abuse of the court's discretion is involved in his denial of injunction; or, otherwise stated, whether there is shown in the record reasonable grounds for its refusal." The following authorities sustain the holding in the case of Bates v. Texas Electric Railway Co., supra; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Construction & General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; 3 Tex.Jur. 1008, § 719.

In the case of Hotel & Restaurant Employees', etc. v. Longley, Tex.Civ.App., 160 S.W.2d 124, 126, it is said, "Regarding the evidence we are required, of course, to give effect to such as was undisputed and not subject to any qualification or variance as the possible result of the judge's exercise of his power to determine its weight or to determine the credibility of the witnesses. Of all disputed evidence we are required to consider only that most favorable to the plaintiffs. Further, of all reasonable inferences which may be drawn from such evidence, we are required to adopt only those, if any, favorable to plaintiffs."

Appellants' position seems to be based on the assumption that the trial court did not and could not have jurisdiction to grant injunctive relief to appellee. It necessarily follows that if the court of equity could not issue a temporary injunction to appellee under the facts of this case, then appellee has no remedy at all. Our courts follow the equitable maxim that equity will not suffer right to be without remedy. The courts of this State have often stated that all that is required to warrant granting of a temporary injunction is a case of probable right and danger to that right unless the injunction is granted. Rosenfield v. Seifert, Tex.Civ.App., 270 S.W. 220; Dunsmore v. Blount-Decker Lumber Co., Tex. Civ.App., 198 S.W. 603.

The Texas statutes relating to injunctions specifically provide as follows: Article 4642, R.C.S. Texas 1925, "Judges of the district and county courts shall, in term time or vacation, hear and determine applications for and may grant writs of injunction returnable to said courts in the following cases:

"1. Where the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him.

"2. * * *

"3. Where the applicant shows himself entitled thereto under the principles of equity, and the provisions of the statutes of this State relating to the granting of injunctions."

The power to regulate rates of public utilities is inherent in the Legislature. Munn v. Ill., 94 U.S. 113, 24 L.Ed. 77; Missouri, K. & T. Railway Co. v. Empire Express Co., Tex.Com.App., 221 S.W. 590; Daniel v. Tyrrell & Garth Investment Co., 127 Tex. 213, 93 S.W.2d 372.

The Legislature may delegate this power and prescribe the conditions under which the power shall be exercised. When delegated, the power may be exercised only in accordance with the conditions prescribed by the Legislature. Home Tel. & Tel. Co. v. City of Los Angeles, 211 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176; City of El Paso v. El Paso City Lines, Inc., Tex. Civ.App., 227 S.W.2d 278.

In Texas this power has been expressly delegated to the city commissions and

councils, subject to certain conditions prescribed by the Legislature for the exercise of such power.

There are two statutes relating to appellants' power and duty to regulate rates for appellee. They are Article 1175, § 12, and Article 1124, R.C.S.1925.

As to the consideration to be given by the appellate court to the evidence adduced at the hearing on temporary injunction, the above-quoted excerpt from Hotel & Restaurant E. I. A. and B. I. League v. Longley, supra, is representative of the Texas cases. In that case a temporary injunction granted to plaintiff was under attack. The court said, "Regarding the evidence we are required, of course, to give effect to such as was undisputed and not subject to any qualification or variance as the possible result of the judge's exercise of his power to determine its weight or to determine the credibility of the witnesses. Of all disputed evidence we are required to consider only that most favorable to the plaintiffs. Further, of all reasonable inferences which may be drawn from such evidence, we are required to adopt only those, if any, favorable to plaintiffs."

Bearing these basic rules in mind, it is obvious that the court as a court of equity did not abuse its discretion granting a temporary injunction upon the uncontroverted facts of this case.

Article 1175, § 12, reads in part, "In order to ascertain all facts necessary for a proper understanding of what is or should be a reasonable rate or regulation, the governing authority shall have full power to inspect the books and compel the attendance of witnesses for such purpose."

In said Article 1124, the Legislature has definitely and specifically set out the basis upon which home rule charter cities, of which Baytown is one, shall exercise the right granted by Article 1175, § 12, supra, to regulate rates, prescribing that the cities shall exercise their power to regulate public utility rates but base "the same upon the fair value of the property * * * devoted to furnishing service * * *."

Another statute showing the tenor of the rule in Texas is Article 6058, R.C.S.

1925, which governs appeals by gas utilities from municipal authority to the railway commission in rate matters. This Article does not lay down the fair value rule, merely providing that the commission shall make such order or decision as it may deem just and reasonable. However, the commission itself, in several instances, has openly said that the rates found by it must afford a fair return upon the fair value of the property. Citing Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819. See also Texas Border Gas Co. v. City of Laredo, 2 P.U.R. (N.S.) 503; In Re Ft. Worth Gas Co., P.U.R.1929A 136; Municipal Gas Co. v. City of Sherman, P.U.R.1925E, 67; Municipal Gas Co. v. City of Wichita Falls, P.U.R.1924B 410. Several of these gas rate cases have been appealed and at no time has the propriety of applying the rule of fair return upon fair value been questioned either directly or indirectly, either by the court involved or the litigants.

Thus appellants are obliged to fix a reasonable rate, or as the courts term it, a fair return, based upon the fair value of appellee's property.

 In Texas, the established procedure by which the constitutional rights of a utility may be protected is by a suit in equity to enjoin enforcement of unreasonable and confiscatory rates. Thus, where a city has refused to perform its statutory duty to fix reasonable rates which would yield a fair return upon the fair value of the utility's property, the Texas courts will exercise their equity powers to enjoin the enforcement of unlawfully low rates.

The power of Texas courts to enjoin confiscatory rates has been settled since the Supreme Court of Texas, in Gulf C. & S. F. R. Co. v. R. R. Com. of Texas, 102 Tex. 338, 116 S.W. 795, held that if Articles 4565 and 4566, providing for a method of reviewing the action of the Texas Railroad Commission had not been enacted by the Texas Legislature, nevertheless: "* * * in the exercise of their equity powers the courts could enjoin such rates if found to be confiscatory; that is, violative of the Constitution of this state or of the United States."

This case and the M. K. & T. Railway case, supra, both of which are cited in appellants' brief, give a plain answer to appellants' contention that the trial court in this case had no authority to issue the temporary injunction after finding the rates to be unjust and unreasonable and confiscatory. These cases alone would seem to dispose of appellants' basis for this appeal, namely, that of lack of jurisdiction of the trial court. There are, however, other cases dealing with this matter which recognize the rule as set forth in the Gulf C. & S. F. R. Co. case.

In American Rio Grande Land & Irrig. Co. v. Karle, 237 S.W. 358, 361, the Court of Civil Appeals held that: "It was expressly held by our Supreme Court, in [Gulf C. & S. F.] Ry. Co. v. Railroad Commission, 102 Tex. 338, 113 S.W. 741, 116 S.W. 795, that, if express statutory authority had not been given to the courts to revise railroad rates, the courts, in the exercise of their equity powers, could have enjoined such rates, if found to be confiscatory or violative of the Constitution of this state or of the United States. * * *"

Another case which stands squarely for the proposition that the trial court in this case had jurisdiction to issue the injunction is that of Railroad Commission of Texas v. Houston and T. C. Railway Co., 90 Tex. 340, 38 S.W. 750, 755, wherein the Supreme Court of Texas said, "It has been generally held, especially by the supreme court of the United States, that the action of the legislature of a state, or of a commission created by it, in fixing rates of transportation, would be revised, and would be set aside and annulled when it violates the constitutional right of the carrier to that degree that it amounts to a taking of property without proper compensation, or without due process of law."

Procedural due process is one thing and substantive due process is something else.

This Court, in the case of Houston Electric Co. v. City of Houston, Tex.Civ.App., 212 S.W. 198, 201, error dismissed, recognized the duty of the trial court in a case such as the instant one and considered fair return on fair value as the settled law of this state in the following language: "As already indicated, it is not thought to have been incumbent upon the Electric Company to show the five-cent rate to be confiscatory within the meaning of the federal Constitution, but that it would have been entitled to restrain its enforcement, had it actually shown that rate to be unreasonable, unjust, and insufficient to maintain and pay a fair return upon the value of the property. As we understand the authorities, such is now the accepted rule. Dillon on Municipal Corporations, vol. 1, §§ 589, 591; City of Austin v. [Austin City] Cemetery Ass'n, 87 Tex. 338 [330], 28 S.W. 528, 47 Am.St.Rep. 114".

The record of this case clearly shows that appellee offered uncontradicted proof in the trial court that the rates which the trial court enjoined were unjust, unreasonable and insufficient to pay a fair return upon the fair value of appellee's property. In the following cases involving the rates of telephone utilities the Federal courts of Texas have granted temporary restraining orders and temporary and permanent injections against the enforcement of rates prescribed by city councils or city commissions alleged by the telephone utilities to result in confiscation of their property; Southwestern Bell Tel. Co. v. City of San Antonio, 5 Cir., 75 F.2d 880; City of Houston v. Southwestern Bell Tel. Co., 259 U.S. 318, 42 S.Ct. 486, 66 L.Ed. 961; City of Dallas v. Dallas Tel. Co., 5 Cir., 272 F. 410, certiorari denied 257 U.S. 638, 42 S.Ct. 50, 66 L.Ed. 410.

In the recent Texas cases on this point, City of El Paso v. El Paso City Lines, Tex.Civ.App., 227 S.W.2d 278, writ of error refused, which involved the legality and reasonableness of a city ordinance for a reparation or recapture of earnings above 6% per annum from public utilities, the trial court enjoined the city from attempting to enforce the ordinance. The Court of Civil Appeals affirmed the judgment of the trial court on the grounds that the ordinance was beyond the express or implied powers of the city and was void as to the utility because of unreasonableness. In discussing the court control of rate fixed by

municipalities, the Court said, if the rate is unreasonable as to the utility, the utility may appeal to the Courts on the ground of confiscation.

█ It is the established law that a public service company, by reason of that obligation has a reciprocal right to fair compensation for the service it furnishes.

In the case of Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 696, Judge Critz, speaking for the Supreme Court, said, "A rate order may be unreasonable and unjust without being confiscatory. On the other hand, a rate order cannot be confiscatory without being unreasonable and unjust. If a rate order merely fails to yield a fair profit or return, it is unreasonable and unjust, but not confiscatory. If it will not only not yield a fair profit or return, but calls on the utility to operate at a loss, it is confiscatory."

The Lone Star Gas Co. case arose out of an order of the Texas Railroad Commission fixing gas rates to yield a return of 6% on the fair value of the utility's property. On appeal by the utility the jury found the 6% return allowed by the Railroad Commission to be confiscatory. In Lone Star Gas Co. v. Texas, 304 U.S. 224, 58 S.Ct. 883, 886, 82 L.Ed. 1304, the Supreme Court of the United States found that the issue of confiscation had been properly submitted and determined by the jury. Mr. Justice Hughes stated: "The jury were instructed that the burden of proof was upon the defendant (appellant) 'to show by clear and satisfactory evidence' that the rate fixed by the Commission's order was 'unreasonable and unjust as to it,' and the court explained that by that phrase was meant that the rate prescribed in the Commission's order 'was so low as to have not provided for a fair return upon the fair value of defendant's property used and useful in supplying the service furnished by said defendant.' * * *

"In view of the definition of 'fair return' and 'unreasonable and unjust' in the court's instructions, we are of the opinion that the issue for the jury to determine was in substance whether the rate was confiscatory."

The case was remanded to the Court of Civil Appeals; and that court's second opinion appears in 129 S.W.2d 1164. A writ of error was granted. The Supreme Court's decision appears in 137 Tex. 279, 153 S.W.2d 681.

A considerable part of the Lone Star controversy involved the character, scope and extent of the judicial review afforded by the statutes of a gas rate order of the Railroad Commission. Judge Critz, quoting from an earlier case, Gulf C. & S. F. R. Co. v. Railroad Comm., 102 Tex. 338, 113 S.W. 741, 116 S.W. 795, pointed out that even in the absence of a statutory appeal, judicial relief is available in rate matters. He said, 137 Tex. 279, 153 S.W. 2d 694, "If articles 4565 and 4566 had not been enacted by the Legislature, the courts would have no authority to revise rates made by the Railroad Commission, but in the exercise of their equity powers the courts could enjoin such rates if found to be confiscatory; that is, violative of the Constitution of this state or the United States."

█ The uniform holding of the courts is well stated in 43 Am.Jur., page 643, § 102: " * * * a public utility is entitled to a just compensation, and what is meant by this is a fair return upon the reasonable value of the property at the time it is being used for the public. Rates fixed by such public authorities which are not sufficient to yield a fair return or reasonable return on the value of the property then being used to render public service are unjust, unreasonable, and confiscatory, and their enforcement deprives the public utility company of its property, in violation of the Federal Constitution. * * * Accordingly, when a constitution or statute provides for the fixing by public authorities of rates or compensation for public utilities, it means reasonable rates and just compensation; and a board or other body * * * has no right to fix rates arbitrarily and without investigation, or without exercising its judgment or discretion to determine what is a fair and reasonable compensation."

In Southwestern Bell Tel. Co. v. Public Service Comm. of Missouri, 262 U.S. 276,

43 S.Ct. 544, 547, 67 L.Ed. 981, Mr. Justice Brandeis, in a concurring opinion, stated the principle as follows: "The compensation which the Constitution guarantees an opportunity to earn is the reasonable cost of conducting the business. Cost includes, not only operating expenses, but also capital charges. Capital charges cover the allowance, by way of interest, for the use of the capital, whatever the nature of the security issued therefor, the allowance for risk incurred, and enough more to attract capital."

In the case of Northern Texas Tel. Co. v. City of Sherman, D.C.Tex., 4 F.Supp. 554, it was held that the telephone company was entitled, upon giving bond, to a temporary restraining order where the telephone company alleged that reduced rates prescribed by the city's ordinance would reduce income to 2.45% on present fair value and would be confiscatory.

The record in this case shows that appellee has at all times managed its Baytown Exchange in an economical and efficient manner. It is undisputed that the rate of return afforded appellee by appellant's rates would not assure confidence in appellee's business, maintain or support appellee's credit, or enable appellee to raise money necessary for the proper discharge of its public duties.

Under the above authorities, we think that the trial court was justified in issuing a temporary injunction in this case. Appellee has shown that its administrative remedy had been exhausted and any relief afforded must come from a court of equity.

A review of the decisions involving rates of public utilities shows that a temporary injunction will issue when three things are made to appear: (1) that there is a reasonable probability that the utility will succeed on final hearing, (2) that the loss to the utility resulting from a refusal to grant the temporary injunction will be irreparable, and (3) that the customers can be adequately protected by bond.

Appellee provided the bond which is more than adequate to protect its customers in the event that it should be held on final hearing that the temporary injunction should not have been issued. Under such a bond no customer can be injured. On the other hand, if the temporary injunction were denied, the appellee would have no way of recovering from its customers.

In the case of City of Amarillo v. Southwestern Tel. & Tel. Co., 5 Cir., 253 F. 638, 640, the telephone company, in accordance with the terms of its franchise agreement with the City of Amarillo, had, after due notice, increased the rates charged for telephone service. The City Commission thereupon passed an ordinance restoring the old rates. The plaintiff claimed that the old rates were confiscatory and sought a temporary injunction against their enforcement.

In sustaining the order of the trial court granting a temporary injunction, the Circuit Court of Appeals stated: "In view of the doubt attending the questions involved, and the difficulty of properly solving them on a preliminary hearing upon affidavits, and the fact that the loss the appellee will suffer from the enforcement of the ordinance pending final hearing will be irreparable, and the possibility of so molding the order as to protect the subscribers if the defendant should succeed upon final hearing, we are not disposed to hold that the District Judge abused his discretion in granting the writ, or ordered its issue improvidently."

In the case of City of Dallas v. Dallas Telephone Co., 5 Cir., 272 F. 410, 421, 257 U.S. 638, 42 S.Ct. 50, 66 L.Ed. 410, the telephone company's franchise agreement with the City provided that the Board of Commissioners of the City should forthwith after October 1, 1920, determine the rates which the company might thereafter charge for telephone service in Dallas. The company had, sometime prior to October 1, 1920, applied for permission to place higher rates in effect on October 1, 1920. The Board of Commissioners refused to pass on the application and continued to delay coming to a final decision. The company applied for temporary injunction to enjoin the enforcement of the rates fixed in the franchise ordinance and to enjoin the City from interfering with the company in charging higher rates.

The trial court granted the temporary injunction and the city appealed. In sustaining the trial court in granting the temporary injunction, the Fifth Circuit Court of Appeals said: "The order of the court so construed, with its provision for a bond to be given by the telephone company on granting said preliminary injunction, was a proper exercise of judicial discretion, and is affirmed."

In the case of Prendergast v. New York Telephone Co., 262 U.S. 43, 43 S.Ct. 466, 469, 67 L.Ed. 853, the Supreme Court affirmed the issuance of a temporary injunction against the enforcement of telephone rates prescribed by the New York Public Service Commission, stating: " * * Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process. * * *

" * * * Especially will the granting of the temporary writ be upheld, when the balance of injury as between the parties favors its issue."

One of the foremost Texas cases on this subject is that of Texas Pipe Line Co. v. Burton Drilling Co., Tex.Civ.App., 54 S.W. 2d 190, wherein the court gave credence to the doctrine enunciated in the Ohio Oil Co. v. Conway Case, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972, by approving an interlocutory injunction where the injury to the opposing party, even if the decree be in his favor, was inconsiderable. In that case the trial court had granted an interlocutory order commanding the defendant to refrain from refusing to accept the plaintiff's oil into its pipe lines for transportation, until the further order of this court. On appeal by the defendant, the Court of Civil Appeals stated [54 S.W.2d 193]: "Insisting that as the proper function of a temporary writ, either mandatory or prohibitive, is to restore or preserve the status quo, appellant contends that the trial court erred in issuing the writ in question because its effect is to award in advance to appellee all relief it could obtain on final trial."

██ It is well established that a court in enjoining rates which are found to be confiscatory is not interfering with the legislative function of rate-making. The Supreme Court of Texas in Railroad Commission of Texas v. Houston and T. C. Railway Co., supra, after holding that rates would be set aside and annulled by the courts when they violate constitutional rights, went on to say [90 Tex. 340, 38 S.W. 755]: " * * * But in doing so the courts have not revised the exercise of discretionary power on the part of the legislature or the commission, * * *."

In this case, the trial court's order, among other things, simply enjoined appellants from interfering with the appellee's charging and collecting fair and reasonable rates until such time as the defendant City Council shall prescribe fair and reasonable rates and charges.

██ This case was, we think, a clear case for a temporary injunction and the trial court did not err, we think, in granting such relief to appellee. The injunctive relief granted was the only possible way by which appellee could be protected from immediate irreparable injury. A denial of the injunction would have meant a continued taking of appellee's property without just compensation until the matter had been final adjudicated and the consequent loss in revenues would have been impossible to recoup even though appellee's position were vindicated on final hearing. It is apparent, on review of the cases and authorities cited, that the actual status quo is being maintained at the present time under the non-confiscatory rates set by appellee under the posting of the refunding bond. The true status quo that equity seeks to maintain, being one in which neither party is subjected to damage, exists under the order and ruling of the trial court. Fair and reasonable rates to both appellants and appellee is the true status quo. Appellee has met the test of probable right and danger to that right unless the injunction be granted. Equity requires no more.

Rule 364, Rules of Civil Procedure, which has as its source Articles 2270 and 2271, R.C.S. of Texas 1925, provides the form and amount of a proper supersedeas bond. However, the Rule does not repeal Article

196

2251, R.C.S. of Texas 1925, which provides that, "Appeals from orders of the district and county courts granting or dissolving temporary injunctions shall lie in the cases and in the manner provided in the title 'Injunctions.'"

The title "Injunctions" referred to in Article 2251 is Title 76, R.C.S. of Texas, Articles 4642 to 4670, Vernon's Ann.Civ.St. arts. 4642–4670, before the adoption of the Rules of Civil Procedure, Article 4662 governed appeals in matters of temporary injunctions and contained the following sentence: "Such appeal shall not have the effect to suspend the order appealed from unless it shall be so ordered by the court or judge who enters the order."

Subsection (d) of Rule 385, Rules of Civil Procedure has Article 4662, Revised Civil Statutes as its source, and it in part repealed Article 4662, said subsection (d) being as follows:

"(d) Where the appeal is from an order granting or refusing a temporary injunction, or granting or overruling a motion to dissolve such an injunction, the cause may be heard in the Court of Civil Appeals or the Supreme Court on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below. Such appeal shall not have the effect to suspend the order appealed from, unless it shall be so ordered by the court or judge entering the order."

■ Appellee has, we think, made a prima facie case of confiscation of its property. The trial court's ruling enabled the appellee to avoid irreparable injury and at the same time afforded the Baytown telephone subscribers complete protection under the Refunding Bond which appellee posted. The trial court did not file any findings except in the order entered, and this record does not disclose that such was requested. The judgment of the trial court recites that it heard and considered evidence and therefore this Court must indulge all reasonable presumptions that there was sufficient evidence to sustain the trial court's judgment.

The trial court has, we think, merely afforded full protection to both appellants, and appellee, under the conditions on which this injunction is issued. We have carefully reviewed all points of error and do not think that the trial court has been guilty of an abuse of discretion by the balancing of the equities in this case.

It follows that the judgment of the trial court is in all things affirmed. Associate Justice CODY not sitting.